CHIEF JUSTICE WILLIAMS
delivered the opinion op th¡e court:
Conway having a debt upon J. P. Gracy and Wm. O’Hara, brought suit in the Caldwell circuit court, and sued out an attachment against Gracy, he being a nonresident, to Graves county, which is dated May 21, 1866, and returnable to the next June term of the court; at the same time a summons issued against both Gracy and O’Hara to Caldwell, returnable also at the following June term.
*567 The sheriff of Graves made return upon the attachment, without date, “Send a new process; we did not discover the land until it was too late.”
Another attachment, bearing the same date, was issued, returnable “ on the first day of the next term of the Caldwell circuit court,” directed to Graves county, upon the back of which is indorsed, “ November term, 1866,” which the sheriff levied on one hundred and seventy acres of land August 10, 1866.
Gracy, having been the executor of Stephen F. Farrow, deceased, upon settlement, was found indebted to Mrs. Roberta Farrow, the widow, one thousand dollars, and to their two infant legatees, Susan and Sebe Farrow, two thousand seven hundred and forty-five dollars, and to secure which he, on August 25, 1866, acknowledged a mortgage to said Peters, as guardian for the minors, and to Mrs. Roberta Farrow, on said land, which was duly recorded'. There was also a warning order on the petition of Conway against Gracy, warning him to appear and answer .at the November term of the Caldwell circuit court, dated also May 21, 1866. The mortgagees and beneficiaries being made parties, they contest the validity of the attachment lien, and assert a prior lien by reason of their mortgage.
It is conceded, and the statutes of the State show, that there was a June term of said court, commencing first Monday in that month.
The court having adjudged the attachment lien good, and as prior to the mortgage, the mortgagees seek a reversal. It is here insisted by appellees that the date and return day of the attachment which was levied are erroneous, through mistake of the clerk, and that, in fact, it dicTnot issue until after the June term of the court, as is apparent, as they insist, from the indorsement of the *568 sheriff on the other attachment, and that, in fact, it was returnable to the November term of the court; and this is - also attested by the words on its back, of “November term, 1866.”
It may be remarked that there was no amendment to the pleadings, affidavit, or other allegation or motion, in the court below, alleging any mistake. There were ten days, in any event, between the date of the summons and attachment and the commencement of the June term.
By section 70, Civil Code, “ the summons shall be returnable to ilie first day of the next term of the court, unless that term begins within ten days from the date of the summons, when it shall be returnable to the first day of the following term.” ' By section 183, “ the return day of the order of arrest, when issued at the commencement of the action, shall be the same as that of the summons.”
By section 225, among other things, it is provided that an order of attachment “ shall be made returnable as an order of arrest is directed to be returned.'''’
It is apparent, therefore, as the summons is to be made returnable at the first term, which does not come within ten days, and as the order of arrest is to be made returnable like it, and the order of attachment the same as an order of arrest, that these provisions apply to actual and not constructive process; for, by section 91, “ a defendant against whom a warning order has been made, shall be deemed to have been constructively summoned on the thirtieth day after the making the order, and the action may proceed accordingly.”
There is in fact no return day specifically named for a warning order, but as it cannot be executed under thirty days, its return day cannot be under that time; hence, these provisions of the Code contained in sections *569 70, 183, and 225, are inconsistent and inapplicable to a mere constructive process and service. This was a petition in ordinary, and actual process was properly sued out, and it and the attachment properly made returnable to the first following term of the court.
It is the legal attestation of the officer who issues that gives validity to the process and confers legal authority on the executing officer to serve it; therefore, in a conflict between the words in the body of the writ, over the official signature of the issuing officer, and a mere indorsement on its back, wholly unattested, the attested words must prevail, even if we could judicially determine that the legal signification of the words on the back of the writ, “ November term', 1866,” meant that the writ was then returnable ; but how can a court, without allegation or proof, judicially determine what these words mean ? By themselves they are meaningless; if taken in connection with the face of the writ, they are inconsistent with it; and if a mistake must be presumed, how can this court determine that the mistake was -in the face of the writ, rather than in the indorsement? Nor can a mistake legally be presumed in the date of the attachment. From the indorsement of the sheriff on another attachment, bearing same date, how can this court judicially know but that the two orders of attachment issued at the same time, and that the sheriff, finding no indorsement on one, returned it with his indorsement; but on the other, finding the words “ November term, 1886,” on its back, executed it, especially as the one returned is indorsed by the sheriff himself, whilst the one executed is indorsed by a deputy ? But suppose it was manifest that the date of the attachment should have been otherwise than it is; this would simply prove it was legally no attachment, and no authority to the sheriff to levy it, *570 as the return day must be tested by the date of issual appearing on the face of the writ.
This is a contest between legal liens, unencumbered by prior equities. Neither had any equity prior to their asserted legal lien; hence, it is a question of strictly legal lien — one claiming bjr virtue of an attachment at law, which on its face shows it had expired, and had no legal vitality when the sheriff levied it, hence his levy could give no legal lien; the other is by a recorded mortgage subsequent to such levy.
The mortgagees have the legal title and legal lien, unless the attaching creditor can show a prior legal subsisting attachment and legal levy.
It has often been decided by this court, that subsequent attaching creditors can show defects in prior attachments, and thereby get the prior liens out of their way; and the same principle authorizes subsequent mortgagees to attack prior attachments and levies; indeed with more force, as, by the conveyance, they get the legal title; hence, necessarily have the right to attack and destroy all prior encumbrances of every kind.
• This cause was finally heard and adjudicated in equity.
There are other questions raised and discussed by appellants ; but as the judgment must be reversed for this error, the others need not be noticed, as appellants have no interest therein, except the one by appellees — that this mistake in the attachment is a mere clerical error, and must be corrected in the court below, and not here. This loses sight of the fact that appellants insist that there was no error as to the date of the attachment, nor as to its being properly returnable to the first following term, instead of the November term; hence, they seek no correction, but insist that, taking the writ as it really is, no valid levy was made; consequently, no legal lien at-ached by reason thereof.
*571 But even had the appellees moved, to correct and amend the process by motion in the court below, we are not prepared to decide that this would have related back to the issual of the writ, and secured the priority of the lien under the levy; for certainly the l’ule is different as to amending the affidavits in attachment cases, which, though sufficient to sustain the attachment as against the. debtor, still, as between attaching creditors, only secures priority as of the date of the amendment; but however this may be, no such motion was made; and there is nothing in this record authorizing this court to adjudge it even a clerical misprision, even if it be conceded that such errors fall within the rules relating to clerical misprisions, which, however, need not now be decided.
It may be remarked, as the attachment levy secured no lien as to this land, it will have no jurisdiction by reason thereof to order a sale, and none on appellant’s cross-petition because of the mortgage; therefore, the'only question which can be judicially determined between these parties, is as to the priorities of their lien; and when it is determined, appellees have no lien by their attachment and levy. The court’s jurisdiction by reason of such lien is gone, unless he shall sue -out another attachment, and have it levied to sell the land subject to the mortgage lien, which may be done; and then, by reason thereof, the court will have jurisdiction to order a sale, settle and pay off the prior lien, and adjudge the surplus, if any, to Conway.
Wherefore, the judgment is reversed, with directions to adjudge the prior lien to the mortgagees, and to dismiss Conway’s claim to a lien absolutely, unless he should sue out another attachment, and have it levied, and for other proceedings as herein indicated.
Judge Peters did not sit in this case.